UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------- x

MANUEL ANTONIO PERALTA,

        Petitioner,

  -against-

YRONELIS YOKASTA JIMENEZ PERALTA,

        Respondent.

-------------------------------------------------------------------- x

**OMNIBUS MEMORANDUM & ORDER**

3:25-CV-1942 (VDO)

**VERNON D. OLIVER**, United States District Judge:

Petitioner Manuel Antonio Peralta ("Mr. Peralta"), is a citizen of the Dominican Republic, who allowed his minor child, E.P., to visit the child's mother, Respondent Yronelis Yokasta Jimenez Peralta ("Ms. Jimenez"), in the United States. After Ms. Jimenez retained E.P. in the United States in July 2025, Mr. Peralta filed a petition to return E.P. to the Dominican Republic under the Hague Convention on the Civil Aspects of International Child Abduction, art. 2, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89, reprinted in 51 Fed. Reg. 10,494 (Mar. 26, 1986) ("Hague Convention" or "Convention"), as implemented by the International Child Abduction Remedies Act ("ICARA"). ICARA "empower[s] courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims." 22 U.S.C. § 9001(b)(4).

Pending before the Court is Ms. Jimenez's motion for appointment of counsel. Also pending are Mr. Peralta's petition for an order returning the child to the Dominican Republic, motion for default judgment, and motion for preliminary injunction. For the following reasons, Mr. Peralta's motion for default judgment is **denied**; Mr. Peralta's motion for preliminary

injunction is **granted**; and Ms. Jimenez's motion for appointment of counsel is **denied**. Mr. Peralta's petition remains pending.

## I.    PROCEDURAL HISTORY

### A.    State Court Action

On August 28, 2025, Ms. Jimenez filed a custody application in Connecticut Superior Court, Judicial District of Danbury (the "State Custody Proceeding").[1] Ms. Jimenez is represented in the State Custody Proceeding by the Thibodeau & Beadnell Law Group, specifically by attorney Jeff Beadnell. Mr. Peralta is represented in the State Custody Proceeding by attorney Mark Shiffrin, his counsel of record in the instant case.

### B.    This Action

Mr. Peralta filed a petition for the return of E.P. to the Dominican Republic and motion for preliminary injunction on November 20, 2025.[2] After the Court (Garcia, J.) granted Mr. Peralta leave to proceed *in forma pauperis*, the United States Marshals Service effected service of process by delivering the papers to Ms. Jimenez's counsel in the State Custody Proceeding, the Thibodeau & Beadnell Law Group.[3] Then, after the Clerk of Court entered default, Mr. Peralta filed a motion for default judgment.[4]

The Court scheduled an evidentiary hearing and ordered Ms. Jimenez to appear and show cause why the motion for default judgment should not be granted.[5] On May 6, 2025, Ms.

---

[1] *Jimenez v. Peralta*, No. DBD-FA25-5022327-S (Conn. Sup. Ct.)

[2] ECF Nos. 1, 3.

[3] ECF Nos. 23, 28.

[4] ECF Nos. 25, 31.

[5] ECF No. 32.

Jimenez filed a motion for appointment of counsel, which was opposed by Mr. Peralta.[6] The parties appeared before this Court (Oliver, J.) for an evidentiary hearing on May 12, 2026.[7] At that hearing, Mr. Peralta, Ms. Jimenez, and another witness (Manuela Peralta, E.P.'s older stepsister) testified with the assistance of a Spanish language interpreter.[8] Mr. Peralta then filed proposed findings of fact and conclusions of law.[9]

## II.   **DISCUSSION**

### A.   **Motion for Default Judgment**

First, the Court denies Mr. Peralta's motion for default judgment.

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process that allows a court to enter a default judgment. *Priestley v. Headminder, Inc.,* 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must obtain an entry of a default under Rule 55(a) by showing that the defaulting party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, the plaintiff must "seek a judgment by default under Rule 55(b)." *Priestley,* 647 F.3d at 505. In determining whether to grant default judgment or whether to relieve a party from default, a court determine whether there is "good cause" under Federal Rule of Civil Procedure 55(c) by assessing three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

---

[6] ECF Nos. 34, 35, 36.

[7] ECF No. 38.

[8] ECF No. 39.

[9] ECF No. 40.

Weighing the relevant factors, the Court finds "good cause" to relieve Ms. Jimenez from default. First, the Court concludes that the default was not willful. While she failed to timely oppose Mr. Peralta's petition and other filings, Ms. Jimenez complied with the Court's order to appear for an evidentiary hearing. At that hearing, she described her attempts to find counsel and, after concluding that she could not afford to pay a retainer requested by a law firm, worked with her State Custody Proceeding counsel to fill out a form to request counsel in this matter. Importantly, English is not her primary language. The context provided by Ms. Jimenez leads the Court to conclude that the failure to timely defend in this lawsuit "cannot accurately be described as willful." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001) ("Resolving all doubts in favor of the party seeking relief, we cannot say that [a party] would not have appeared should it have been able to find new counsel.").

Second, the Court finds that setting aside the entry of default will not prejudice Mr. Peralta because "delay standing alone does not establish prejudice." *Enron*, 10 F.3d at 98.

Third, the Court finds that Ms. Jimenez failed to establish a meritorious defense, as her proffered reasons for retaining E.P., including her concerns that the child was subjected to emotional danger and that Mr. Peralta had issues with finances, would not constitute a complete defense here, where Mr. Peralta has established a prima facie case. *See New York v. Green*, 420 F.3d 99, 109–10 (2d Cir. 2005) (finding no clear error in concluding that defendants failed to raise a meritorious defense where a defendant's "assertions amounted to little more than conclusory denials"). Though this factor weighs in favor of granting default judgment, it is outweighed by the first two *Enron* factors tipping against entering default judgment.

Accordingly, considering the *Enron* factors and that "all doubts must be resolved in favor of trial on the merits" the Court **denies** the motion for default judgment and relieves Ms. Jimenez from default. *Enron*, 10 F.3d at 96.

### B.    Motion for Preliminary injunction

The Court next grants Mr. Peralta's motion for preliminary injunction, as the record establishes that there is entitlement to preliminary relief.

"The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). "In general, '[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024) (quoting *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023)). While a typical preliminary injunction is "prohibitory" in that it maintains the status quo pending a trial on the merits, a "mandatory" preliminary injunction alters the status quo "by commanding some positive act." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995).  Where, as here, a party seeks a mandatory injunction, it must satisfy a heightened legal standard and both: "(1) make a strong showing of irreparable harm, and (2) demonstrate a clear or substantial likelihood of success on the merits." *Yang v. Kosinski*, 960 F.3d 119, 127-28 (2d Cir. 2020) (cleaned up).

### 1.    Strong Showing of Irreparable Harm

Plaintiff has made a strong showing that he would suffer irreparable harm that cannot be remedied in the absence of a preliminary injunction.

In order to satisfy the irreparable harm requirement, a plaintiff must "demonstrate that absent a preliminary injunction [he] will suffer an injury that is . . . actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (cleaned up). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of N.Y.,* 409 F.3d 506, 510 (2d Cir. 2005).

Here, Mr. Peralta has strongly established that he would suffer irreparable harm. The record is replete with aggravating undisputed facts, including that Ms. Jimenez breached the agreement with Mr. Peralta for E.P. to temporarily visit Ms. Jimenez during the summer of 2025. Specifically, Ms. Jimenez retained E.P. in the United States without Mr. Peralta's consent by placing E.P.'s passport into a safe, which prevented E.P. from accompanying his stepsister on their return flight, despite E.P. having a round-trip ticket. Moreover, since then, Ms. Jimenez has not only interfered with several of Mr. Peralta's daily attempts to communicate with E.P., but also blocked attempts by Manuela to communicate with E.P through social media. The damage caused by Mr. Peralta's separation from E.P. and Ms. Jimenez interfering with the attempts to contact their child is difficult to quantify. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) ("Irreparable harm may be found where damages are difficult to establish and measure.").

### 2.    Substantial Likelihood of Success on the Merits

Plaintiff has made a clear showing that he is likely to succeed on the merits.

The Hague Convention "reflects a design to discourage child abduction." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014). "To that end, the Convention ordinarily requires the

prompt return of a child wrongfully removed or retained away from the country in which she habitually resides." *Monasky v. Taglieri*, 589 U.S. 68, 72 (2020). "Ordering a return remedy does not alter the existing allocation of custody rights . . . but does allow the courts of the home country to decide what is in the child's best interests." *Abbott v. Abbott*, 560 U.S. 1, 20 (2010).

The record developed during the evidentiary hearing reveals that Mr. Peralta has proved his prima facie case against Ms. Jimenez for wrongful retention of their child, E.P., in the United States. To prevail, Mr. Peralta must prove by a preponderance that "(1) the child was habitually a resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention." *Gitter v. Gitter*, 396 F.3d 124, 130–31 (2d Cir. 2005). Here, Mr. Peralta and Ms. Jimenez are married and have been living apart in different countries. While they have been living apart, they agreed for Mr. Peralta to live with E.P. in the Dominican Republic, where E.P. has been going to school at Cendi and been under the care of a pediatrician. The parties also agreed for E.P. to visit Ms. Jimenez during the summers, which Mr. Peralta has facilitated multiple times. With the consent of Mr. Peralta, E.P. came to the United States in the summer of 2025 with his stepsister for a vacation with E.P.'s mother, with a return ticket for July 20, 2025. Then, after concluding that E.P. was in emotional danger, Ms. Jimenez unilaterally decided to retain E.P. in the United States. Before informing Mr. Peralta and Manuela of this decision, Ms. Jimenez locked E.P.'s passport in a safe. E.P. is currently living with Ms. Jimenez in Danbury, Connecticut. These facts affirmatively show that Mr. Peralta is entitled to an order facilitating the prompt return of E.P. to the Dominican Republic, where E.P. habitually resided.

### 3.    Balance of Equities and Public Interest

The Court concludes that the balance of the hardships and public interest tip decidedly in Mr. Peralta's favor.

In analyzing the balance of the equities and whether injunctive relief would be in the public interest, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

As an initial matter, the Court acknowledges the hardships that both Mr. Peralta and Ms. Jimenez have experienced by being separated from their child. But, as discussed, Mr. Peralta has consistently lived with E.P. in the Dominican Republic since shortly after E.P.'s birth. For several previous years, while living with Mr. Peralta, E.P. has attended school and has been treated by a pediatrician in the Dominican Republic. In contrast, Ms. Jimenez moved to the United States years ago to pursue opportunities and did not live with E.P. on a daily basis. Ms. Jimenez instead agreed for E.P. to visit her during the summers, which Mr. Peralta has facilitated multiple times. Thus, the ongoing injury to Mr. Peralta, including by being separated from E.P., far outweighs any injury to Ms. Jimenez that would stem from returning E.P. to the Dominican Republic. On balance, the equities tip in favor of granting the preliminary injunction.

Next, the Court concludes that the public interest would not be harmed or disserved by issuance of a preliminary injunction. Congress has found that "[t]he international abduction or wrongful retention of children is harmful to their well-being," 22 U.S.C. § 9001(a)(1), and has authorized courts to "take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further

removal or concealment before the final disposition of the petition" brought under the Hague Convention. 22 U.S.C. § 9004(a). The public interest is therefore served by ensuring that the minor child is returned to his habitual residence.

### 4.    Security

Under Rule 65(c) of the Federal Rules of Civil Procedure, a court may "issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). It is "within the discretion of the district court to decide that, under the circumstances, no security [is] required." *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004). Here, considering Mr. Peralta's history of compliance with the legal process and representations that he will comply with any court orders, and Ms. Jimenez's failure to offer any proof of harm, the Court exercises its discretion to enter the injunction without requiring Mr. Peralta to post bond.

### C.    Motion for Appointment of Counsel

Finally, the Court denies Ms. Jimenez's motion for appointment of counsel.

"[E]xcept when faced with the prospect of imprisonment, a litigant has no legal right to counsel in civil cases." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013). But, after weighing the factors set forth in *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986), a court "may request an attorney to represent any person unable to afford counsel." 42 U.S.C. § 1915(e)(1); *see also Dolan v. Connolly*, 794 F.3d 290, 297 (2d Cir. 2015). The relevant factors include "(1) whether the party's claim has substantial merit; (2) whether the nature of the factual issues requires an investigation, and whether the party's ability to investigate is inhibited; (3) whether the claim's factual issues turn on credibility, which

benefits from the skills of those trained in presentation of evidence and cross-examination; (4) the party's overall ability to present its case; and (5) whether the legal issues presented are complex." *Garcia v. USICE (Dep't of Homeland Sec.)*, 669 F.3d 91, 98–99 (2d Cir. 2011) (citing *Hodge*, 802 F.2d at 60–61). In considering a motion for appointment of counsel, a district court must "ask[] first whether the claimant has met a threshold showing of some likelihood of merit." *Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010)

Ms. Jimenez fails to satisfy the threshold requirement of likely merit. The Second Circuit has "reiterated the importance of requiring indigent litigants seeking appointed counsel to first pass the test of likely merit," where a court determines whether the litigant's "position seems likely to be of substance," or show "some chance of success," because "even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 204 (2d Cir. 2003) (cleaned up). In order to show "some change of success," Ms. Jimenez must demonstrate that Mr. Peralta is unlikely to meet his burden of showing, by a preponderance of evidence, that "(1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention." *Gitter*, 396 F.3d at 130–31.

But, as previously discussed, the evidentiary hearing revealed that Mr. Peralta has proved his prima facie case against Ms. Jimenez for wrongful retention of their child in the United States. Nor has Ms. Jimenez set forth any facts that would conceivably support her burden of opposing the return of E.P. to the Dominican Republic. *Tereshchenko v. Karimi*, 102 F.4th 111, 125 (2d Cir. 2024) ("Once a petitioner makes out a prima facie case that removal

or retention was wrongful, the court must order the child's prompt return unless the respondent shows that one of the Convention's 'narrow' exceptions applies.").

Accordingly, based on the ample evidence from the hearing and record, the Court finds that any defense Ms. Jimenez would assert in opposition to Mr. Peralta's petition is unlikely to be of substance and **denies** the motion for appointment of counsel.

## III.   CONCLUSION

For the reasons stated herein, the Court **denies** Mr. Peralta's motion for default judgment and Ms. Jimenez's motion for appointment of counsel. The Court **grants** Mr. Peralta's request for a preliminary injunction.

**IT IS HEREBY ORDERED:**

1.    On or before **June 18, 2026**, Ms. Jimenez must get in contact with Mr. Peralta's counsel (attorney Mark Shiffrin) via contemporaneous means (video or telephone) to discuss the logistics of returning E.P. to the Dominican Republic.

2.    On or before **June 20, 2026**, the parties shall file a joint status report regarding the status of discussions surrounding the return of E.P. to the Dominican Republic.

3.    On or before **July 15, 2026**, Ms. Jimenez must either return E.P. to the Dominican Republic or allow E.P., accompanied by a chaperone, to return to the Dominican Republic.

Considering the Supreme Court's admonition that courts should take steps to decide cases brought under the Hague Convention "as expeditiously as possible, for the sake of the children," *Chafin v. Chafin*, 568 U.S. 165, 179 (2013), the Court enters the following scheduling order:

1.    On or before **June 18, 2026**, Ms. Jimenez must answer or otherwise respond to Mr. Peralta's petition for an order returning E.P. to the Dominican Republic. Failure to file an answer that states her affirmative defenses may lead to the Court finding that Ms. Jimenez forfeited her defenses. *Tereshchenko*, 102 F.4th at 128.

11

2.      The parties shall appear for a bench trial on **July 15, 2026, at 10:00 A.M.** At that trial, Ms. Jimenez must show cause why Mr. Peralta's petition for an order of return should not be granted. Considering that Mr. Peralta has already proved his prima facie case, the parties are on notice that Ms. Jimenez's failure to timely assert affirmative defenses in an answer may lead the Court to "advance the trial on the merits and consolidate it with the hearing" on the preliminary injunction previously held on May 12, 2026. Fed R. Civ. P. 65(a)(2) ("Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial.").

3.      The parties are again on notice that the Court is unable to provide a Spanish language interpreter for any proceedings.

The Clerk of Court is respectfully directed to mail a copy of this order to Ms. Jimenez and her counsel in the State Custody Proceeding, Jeff Beadnell of the Thibodeau & Beadnell Law Group.

Hartford, Connecticut
May 28, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

12